**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**

**MONROE DIVISION**

| | |
|---|---|
| CAPPY D. SANDERS<br>    LA. DOC #162297<br>VS.<br><br>ROYCE TONEY, ET AL. | CIVIL ACTION NO. 08-1953<br><br>SECTION P<br>JUDGE JAMES<br>MAGISTRATE JUDGE HAYES |

**REPORT AND RECOMMENDATION**

*Pro se* plaintiff, Cappy D. Sanders, proceeding *in forma pauperis*, filed the instant civil rights complaint pursuant to 42 U.S.C. §1983 on December 12, 2008. Plaintiff is an inmate in the custody of Louisiana's Department of Public Safety and Corrections. He is incarcerated at the Forcht Wade Corrections Center, Keithville, Louisiana; however, when he filed his complaint he was a detainee at the Ouachita Corrections Center (OCC), Monroe, Louisiana and he complained that he was denied prompt and appropriate medical treatment for glaucoma. Plaintiff sued Ouachita Parish Sheriff Royce Toney, OCC Warden Brian Newcomer, and the OCC Medical Staff. He prayed for an unspecified amount of money damages and, in a subsequent pleading, injunctive relief. This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the court. For the following reasons it is recommended that the complaint be **DISMISSED WITH PREJUDICE** as frivolous.

*Statement of the Case*

*1. Original Complaint [rec. doc. 1]*

On December 12, 2008, plaintiff filed a civil rights complaint which alleged that he was being neglected by the defendants. Plaintiff claimed that while he was incarcerated at OCC he

was diagnosed with glaucoma and that laser surgery was performed. He complained about his eyes to the OCC Medical Department and filed numerous sick calls, but all of his complaints were ignored.

On November 17, 18, 24, and 25 plaintiff requested medical attention for headaches, but on each occasion his requests were ignored. Plaintiff continued to submit sick calls on December 3, 5, and 8, 2008, but his requests for treatment were denied.

## 2. Amended Complaint Seeking Emergency Relief [rec. doc. 4]

On January 27, 2009, plaintiff filed an amended pleading in which he claimed that despite his daily sick call requests, the defendants were still neglecting to provide treatment or medication for his eyes from December 16, 2008 – January 8, 2009. He requested an emergency order from the court directing the defendants to take him to a physician immediately because he feared that he would soon lose his eyesight.

## 3. Hearing on Plaintiff's Request for TRO

Due to the seriousness of plaintiff's allegations, the Court convened a hearing on January 29, 2009. At that hearing plaintiff testified as follows:

1. At all times pertinent to his complaint he was a pre-trial detainee at the OCC. [Hearing Transcript, p. 3]

2. Plaintiff's right eye was burned by chemicals in January 2008 while he was in custody in a work-release program. He was treated by Dr. Broussard in Monroe because he was experiencing "dry eye", pain, and loss of vision. He was released from custody in February and was examined by Dr. Vekovius in Shreveport. Dr. Vekovius apparently concluded that plaintiff

2

was suffering from glaucoma.[1] [*Id.*, pp. 3-4]

3. In June 2008 plaintiff was arrested and incarcerated at OCC. [*Id.*, p. 5] Plaintiff claimed that he asked for medical attention because he was experiencing pain, blurred vision, and sleeplessness. He got no response to his grievances and requests. He admitted that he was examined by a physician in October and that she prescribed medication – Ristasis for dry eye. However, according to the plaintiff this medication is often unavailable during "pill call." Consequently, he claimed that the condition was deteriorating. [*Id.*]

Under cross examination plaintiff provided the following evidence:

1. Timolol, Xalatan and Ristasis[2] were prescribed. According to plaintiff he was required to take Xalatan once a day and Ristasis twice a day. He complained that these medications were not being provided. He claimed that the Ristasis was provided 2-3 days/week even though he was required to use the medication every day. [*Id.*, p. 8]

2. Plaintiff was arrested on June 21, 2008, and charged with simple robbery. He did not have his medication with him when he was taken into custody. [*Id.*, p. 9] He was examined at the

---

[1] Glaucoma refers to a group of disorders that lead to damage to the optic nerve, the nerve that carries visual information from the eye to the brain. Glaucoma is the second most common cause of blindness in the United States. There are four major types of glaucoma – Angle-closure (acute) glaucoma, Congenital glaucoma, Open-angle (chronic) glaucoma, and Secondary glaucoma. All four types of glaucoma are characterized by increased pressure within the eyeball, and therefore all can cause progressive damage to the optic nerve.
See Medline Plus, A Service of the U.S. National Library of Medicine and the National Institutes of Health, http://www.nlm.nih.gov/medlineplus/ency/article/001620.htm

[2] Timolol is used to treat glaucoma, a condition in which increased pressure in the eye can lead to gradual loss of vision. Timolol decreases the pressure in the eye. Xalatan or Latanoprost is a topical eye medication used to reduce pressure inside the eye. It is used to treat eye conditions, including glaucoma and ocular hypertension, in which increased pressure can lead to a gradual loss of vision. Restasis or Cyclosporine ophthalmic is used to increase tear production in people with dry eye disease. Cyclosporine ophthalmic is in a class of medications called immunomodulators. It works by decreasing swelling in the eye to allow for tear production. See Medline Plus, A Service of the U.S. National Library of Medicine and the National Institutes of Health, Drugs and Supplements at http://www.nlm.nih.gov/medlineplus/druginformation.html

OCC infirmary within 24 hours of his arrest and asked to give a complete medical history by the medical staff. [*Id*.] He was told by OCC staff that they would contact his treating physician, Dr. Broussard. [*Id*., p. 10]

    3. On July 1, 2008, – six days after entering OCC – plaintiff was examined by a physician at the LSU Medical Center's ophthalmology clinic. Timolol was prescribed and supplied. [*Id*.] Plaintiff returned to the clinic and was again examined by the physician on July 25, 2008. On this occasion the physician prescribed Xalat. [*Id*. pp. 10-11]

    4. On August 7, 2008, plaintiff was given Visine-A and a refill of Xalatan. [*Id*., p. 12] On August 25, 2008, plaintiff made a sick call request. On August 28, 2008, he was transported again to the LSU ophthalmology clinic where laser treatment was scheduled. [*Id*., pp. 12-13] On September 16, 2008, plaintiff was returned to the clinic where he received laser treatment and was given Pred Forte[3], Timolol and Xalatan. [*Id*., p. 13] On October 6, 2008, he was returned to the eye clinic for a follow-up examination. [*Id*.] On October 14, 2008, he returned for laser treatment on the other eye and on October 30, 2008, he returned for follow-up care. [Id.]

    Corporal Brian D. George, an LPN employed in the OCC medical department testified and produced plaintiff's booking and medical files which were ultimately introduced into evidence as defendants' exhibits. [Id., pp. 18 and following] George specifically identified and authenticated plaintiff's Medication Administration Record or MAR and testified that according to the records, there was no lapse in providing the proper medications to plaintiff during the

---

[3] Pred Forte or Prednisolone reduces the irritation, redness, burning, and swelling of eye inflammation caused by chemicals, heat, radiation, infection, allergy, or foreign bodies in the eye. It sometimes is used after eye surgery. See Medline Plus, A Service of the U.S. National Library of Medicine and the National Institutes of Health, Drugs and Supplements at http://www.nlm.nih.gov/medlineplus/druginformation.html

4

period of July 2008 to the date of the hearing in January 2009. [*Id*., p. 30] He likewise identified and authenticated the prescription history report, and testified that according to the document the medication prescribed for plaintiff from the LSU Clinic was filled and dispensed as ordered for the period September 2008 through January 2009. [*Id*., p. 31] He also testified that the medications, which were in the form of eye drops, were given to the plaintiff with instructions to "self-administer." [*Id*., p. 33] He then testified:

    1. Plaintiff submitted a sick call on August 4, 2008, in which he complained of itching eyes, headaches, sensitivity to light and sleeplessness. He was referred to a physician, Dr. Fuller, at OCC. Since plaintiff was under the care of an ophthalmologist, and scheduled for follow up visits, Dr. Fuller offered an over the counter eye drops – Visine or Nafcon A. George then contacted the eye clinic and asked them which medication was preferred. [*Id*., pp. 34-35]

    2. Plaintiff submitted a sick call request on August 25, 2008, complaining of pressure in his eyes and headache. Nurse Broadway referred him to Dr. Twitchell, a physician at E.A. Conway Hospital. He referred plaintiff to the LSU Ophthalmology Clinic. [*Id.* ,pp. 35-36] Plaintiff was apparently examined at the clinic and ordered to continue Timolol twice a day; ALT or laser treatment had previously been scheduled for some time in September. Therefore, on September 16, 2008, plaintiff returned to the clinic where the laser procedure was done and plaintiff was again prescribed Xaltan, Timolol, and Pred Forte. [*Id*., p. 36]

    3. Plaintiff was next transported to the LSU clinic on October 6, 2008. ALT was performed on the right eye and the physician ordered plaintiff to continue the Timolol, Xalatan. The physician discontinued the prednisone forte and scheduled a follow up appointment for October 14. [Id., p. 37] Plaintiff was returned, as ordered, on October 14 for the follow-up

5

appointment. [*Id.*, p. 38] Plaintiff returned to the clinic again on October 30, 2008, where both of his eyes were checked to determine the effectiveness of the two prior laser treatments. The physician noted "... good response with ALT..." and ordered plaintiff to continue his medications and stop the prednisone forte. Follow up visits were scheduled for February 13 and 26, 2009, in order to perform HVF and SWAP tests of plaintiff's visual field and the thickness of the optical nerve. [*Id.*, pp. 38-39]

4. George concluded his direct testimony by denying any neglect of any requests by the plaintiff for medication or medical care. He also stated that the prison had complied with each of plaintiff's sick call requests. [*Id.*, p. 40]

Under cross-examination George explained that on one occasion when plaintiff requested sick call for headaches, it had been noted that he had an appointment with the eye clinic within the week, and therefore, since plaintiff was under the care of a specialist, it was deemed prudent to defer to the ophthalmologist. [*Id.* p. 45] George also admitted that he had printed plaintiff's name on the request for medical records sent to Dr. Broussard. [*Id.*, p. 46]

At the conclusion of the presentation of the evidence, plaintiff requested a transfer to another facility; his request was denied. [*Id.*, p. 47] He was then given an opportunity to testify, call witnesses, introduce evidence, or argue his case; however, he declined. [*Id.*, pp. 48-49]

Thereafter, the Court made the following rulings and observations,

> ... I'm satisfied, based on the testimony I've heard here today, that you have not been denied adequate medical care. It may not be exactly the care you want or given as promptly as you want, but under the circumstances, it seems reasonable to the court. I think there is not a substantial likelihood that you would succeed on the merits in this matter. At the present time, and of course the court's expectation would be that whatever treatment is appropriate and called for by the doctors, all of that would – OCC would remain obligated to do that and I'm sure they'll

> continue to do that...
>
> But at this point, there's nothing to suggest that they haven't provided you with medical care and provided you with the medications that have been ordered by the doctors... you're entitled to reasonable medical care. You're not necessarily entitled to the care you want or the doctor you want or the medications you want and that, you know, you need to know that as a matter of law that's the case. [*Id.*, pp. 49-50]

On February 6, 2009 Judge James referred the petition to the undersigned for review, report, and recommendation. [rec. doc. 13]

*4. Second Request for Counsel [rec. doc. 17]*

On March 10, 2009, plaintiff filed a pleading entitled "Writ of Habeas Corpus" again requesting appointment of counsel.

*5. Change of Address [rec. doc. 18]*

On March 25, 2009, plaintiff advised the court of his transfer to the Forcht Wade Corrections Center, an LDOC prison in Keithville, Louisiana.

*Law and Analysis*

*1. Request for Appointment of Counsel*

Plaintiff's oral request for appointment of counsel was denied by the court during the course of the evidentiary hearing. Plaintiff has again requested appointment of counsel. [rec. doc. 17] Congress has not specifically authorized courts to appoint counsel for plaintiffs proceeding under 42 U.S.C. §1983. "Generally no right to counsel exists in §1983 actions [but] appointment of counsel should be made as authorized by 28 U.S.C. §1915 where 'exceptional circumstances' are present." *Robbins v. Maggio*, 750 F.2d. 405 (5th Cir. 1985). Pursuant to 28 U.S.C. §1915(e)(1), federal courts are given the power to request that an attorney represent an indigent

plaintiff. In the case of *Mallard v. United States District Court for the Southern District*, 490 U.S. 296, 301-302, 109 S.Ct. 1814, 1818, 104 L.Ed.2d 318 (1989) the United States Supreme Court held that federal courts can only request that an attorney represent a person unable to employ counsel because federal courts are not empowered under 28 U.S.C. §1915(e)(1) to make compulsory appointments.

Although courts can request that an attorney represent an indigent plaintiff, the court is not required to make this request in the absence of "exceptional circumstances." See *Ulmer v. Chancellor*, 691 F.2d. 209, 212 (5th Cir. 1982) and *Jackson v. Cain*, 864 F.2d. 1235, 1242 (5th Cir. 1989). No precise definition of "exceptional circumstances" is available, but the United States Courts of Appeal have provided a litany of factors for lower courts to consider in determining whether the plaintiff is entitled to have the court request that counsel assist him in his suit. It is proper for the court to consider the following factors: the type and complexity of the case; the plaintiff's ability to adequately present and investigate his case; the presence of evidence which largely consists of conflicting testimony so as to require skill in presentation of evidence and cross-examination; and the likelihood that appointment will benefit the petitioner, the court, and the defendants by "shortening the trial and assisting in just determination." See *Parker v. Carpenter*, 978 F.2d. 190 (5th Cir. 1992), citing *Murphy v. Kellar*, 950 F.2d. at 293, n.14; *see also Ulmer*, 691 F.2d. at 213, and *Jackson*, 864 F.2d. at 1242. Additionally, a court may consider whether a plaintiff has demonstrated the inability to secure private counsel on his own behalf. *See Jackson*, 864 F.2d. at 1242; *Ulmer*, 691 F.2d. at 213. Plaintiff is not excused from trying to procure counsel for himself.

Plaintiff has managed to file his original complaint along with additional pleadings.

Plaintiff has successfully articulated his cause of action against the named defendants. No special legal knowledge is required of plaintiff herein. Plaintiff has first hand knowledge of the facts which form the basis of this action. The claim is not necessarily atypical of those often asserted in civil rights litigation and is not complex. Further, as will be shown, plaintiff's claims are patently frivolous and counsel would not assist the court in the resolution of these claims.

Finally, plaintiff has failed to demonstrate that he has attempted to procure counsel on his behalf. Accordingly, plaintiff's request for appointment of counsel should be denied as the circumstances presented herein are not "exceptional" so as to warrant the appointment of counsel. Moreover, plaintiff's request should be denied because plaintiff has failed to demonstrate any effort to secure counsel on his own behalf.

## 2. Screening

When a prisoner sues an officer or employee of a governmental entity pursuant to 42 U.S.C. §1983, the court is obliged to evaluate the complaint and dismiss it without service of process, if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C.1915A; 28 U.S.C.1915(e)(2). *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir.1990).

A claim is frivolous if it lacks an arguable basis in law or in fact, *Booker v. Koonce*, 2 F.3d 114, 115 (5th Cir.1993); see, *Denton v. Hernandez*, 504 U.S. 25, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992). A civil rights complaint fails to state a claim upon which relief can be granted if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. Of course, in making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157

F.3d 1022, 1025 (5th Cir.1998).

A hearing need not be conducted for every *pro se* complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n. 4 (5th Cir.1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir.1986). District courts must construe *in forma pauperis* complaints liberally, but they are given broad discretion in determining when such complaints are frivolous. *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir.1994).

A civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995). Furthermore, a district court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d at 97.

Plaintiff's complaint recites the facts relied upon to support his specific theories of liability. A hearing has been conducted and evidence adduced. Therefore, further amendment of these pleadings would serve no useful purpose.

### 3. Medical Care Claims

Plaintiff was a pretrial detainee when his medical care claims arose. The constitutional right of a pretrial detainee to adequate medical care arises from the due process guarantees of the Fourteenth Amendment. *Wagner v. Bay City*, 227 F.3d 316, 324 (5th Cir.2000). A detainee's right to adequate and prompt medical attention is violated only if the defendants act with deliberate indifference to a substantial risk of serious medical harm which results in injury. *Id.*

Deliberate indifference requires that the defendants have subjective knowledge of the risk of harm. *Id.* Mere negligence or a failure to act reasonably is not enough. The defendants must have the subjective intent to cause harm. *Id.*

Deliberate indifference in the context of the failure to provide reasonable medical care to a pretrial detainee means that: (1) the prison officials were aware of facts from which an inference of substantial risk of serious harm could be drawn; (2) the officials actually drew that inference; and (3) the officials' response indicated that they subjectively intended that harm occur. *Thompson v. Upshur County, Texas*, 245 F.3d at 458-59. "[T]he failure to alleviate a significant risk that [the official] <u>should have perceived</u>, but did not is insufficient to show deliberate indifference." *Domino v. Texas Department of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001)(emphasis supplied). Moreover, "deliberate indifference cannot be inferred merely from <u>a negligent or even a grossly negligent response</u> to a substantial risk of serious harm." *Thompson*, 245 F.3d at 459 (emphasis supplied). "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir.1997); see also *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir.1999). The fact that a plaintiff disagrees with what medical care is appropriate does not state a claim of deliberate indifference to serious medical needs. See *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir.1997).

Plaintiff claims that he was denied medical care; however, the evidence adduced at the January 29, 2009, hearing refuted each and every factual claim alleged by the plaintiff. In fact, the Court, after considering that evidence concluded,

... I'm satisfied, based on the testimony I've heard here today, that<u> you have not</u>

11

> been denied adequate medical care. It may not be exactly the care you want or given as promptly as you want, but under the circumstances, it seems reasonable to the court... at this point, there's nothing to suggest that [the defendants] haven't provided you with medical care and provided you with the medications that have been ordered by the doctors... you're entitled to reasonable medical care. You're not necessarily entitled to the care you want or the doctor you want or the medications you want ... [*Id*., pp. 49-50]

Since the hearing, plaintiff has provided no new evidence to establish that he was denied adequate medical care during his detention at OCC.

*4. Conclusion and Recommendation*

Therefore,

Plaintiff's request for appointment of counsel [rec. doc. 17] is **DENIED;** and,

**IT IS RECOMMENDED** that plaintiff's civil rights complaint be **DISMISSED WITH PREJUDICE** as frivolous in accordance with the provisions of 28 U.S.C. § 1915(e)(2)(B)(i).

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See** *Douglass v. United Services Automobile Association,* **79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, May 1, 2009.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE